**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.   09-10138 RGS |
| | ) | |
| JOSEPH CENTOLA | ) | |
| Defendant. | ) | |
| | ) | |

## SENTENCING MEMORANDUM OF THE GOVERNMENT

The United States of America hereby files its sentencing memorandum.[1]

### A.   Defendant Has Shown He Is Incapable of Abiding by the Law

Defendant Joseph Centola was first convicted of car theft in 1993, when he was just eleven years old.  Presentence Report ("PSR"), ¶ 32.  He was violating the law even earlier. From that early age, not a year went by without a conviction for stealing cars or burglary.  PSR, ¶¶ 43.  For the last seventeen years, virtually all of his young life, he has been in trouble.  PSR, *passim.*  The first break came in 2001, only because Centola was incarcerated for twenty-seven months.  He was released on September 5, 2003.  PSR ¶ 43.  Thereafter, it looks like he stayed out of trouble for seven months until he was arrested for carrying a dangerous weapon (on April 9, 2004) and assault and battery with a dangerous weapon and armed and masked robbery (on May 10, 2004).  PSR ¶¶ 58 & 59.  These charges were nolle prossed.  *Id.*

Defense counsel essentially concedes this history but suggests that Centola showed potential for rehabilitation during the July, 2008 to February, 2009 period.  Defendant's

---

[1] The government apologizes to the Court and defense counsel for filing this memorandum only four hours before the sentencing hearing.  The government did not intend to file a memorandum until it received defendant's memorandum yesterday and this is in the nature of a reply.

Sentencing Memorandum of June 16, 2010 at 2.  However, a closer look at the record for that time period shows that defendant was still engaging in drug abuse.  He tested positive in September and October of 2008 (it is unclear if he was tested in July or August).  PSR ¶ 89.  According to the PSR, no test results were provided for November, 2008.  In December and January, defendant was clean.  However, as stated in the PSR, "treatment notes from January 2009 describe the defendant's focus on recovery and participation in groups as poor and his **risk of relapse as high**...."  PSR ¶ 89.  Thus, even in this one period of supposed positivity, defendant was not really trying and was unable to comply with the essential conditions of his program. In February of 2009, apparently just before he committed the crime at issue in this case, "he was referred for residential treatment, but failed to follow through with requirements for admission into the program."  PSR ¶89.  Notably, one of the drugs for which Centola tested positive was marijuana.  The government submits that Centola's failure to quit smoking marijuana is reflective of his lack of serious commitment to abide by imposed conditions- whether they be of a program or the justice system.[2]

    B. <u>**Centola Was the Instigator**</u>

There is no dispute that Centola was more culpable of the two co-defendants in this case.  As stated by defendant and reported in the PSR, Centola resisted Walsh's efforts to get defendant to stop using drugs and, instead, Centola caused Walsh to relapse and join him in the bank robbery.  PSR ¶ 86.  Although the government has not pushed for an enhancement under Chapter 3 of the Sentencing Guidelines for defendant's role, the Court may, and should, still consider

---

[2] The PSR sets out Centola's difficulty in complying with the rules of prison life as well; *see, e.g.*, ¶ 41 (defendant received eight disciplinary reports during 2001-2003 incarceration) *but see* PSR ¶ 44 (defendant appears to have done better during his 2008 incarceration).

Centola's role in determining where to sentence him within the guideline sentencing range calculated by Probation.  Because Centola is more culpable than the co-defendant Walsh, he should not receive the same sentence.[3]

### C. Centola's Sentence Should Be Consecutive

Under §5G1.3(c), the Court has the discretion to run Centola's federal sentence consecutive or concurrent, or some mix thereof, to the undischarged portion of his state sentence. USSG §5G1.3(c)(2009).   Application note 3(C) expresses a preference for running a federal sentence <u>consecutively</u> to an undischarged term of imprisonment resulting from the revocation of probation or supervised release.  This is based on the policy that any sentence imposed under such conditions, whether wholly federal or a mix of jurisdictions, be consecutive:  "it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation."  USSG §7B1.3 (f) and application note 4.  *See, e.g.*, *United States  v. Gondek*, 65 F.3rd 1 1995);  *United States  v. McCarthy*,  77 F.3rd 522 (1st Cir. 1996);  *United States  v. Lopez*, 985 F. Supp. 59 (D.R.I. 1997).

A violation of the condition of supervised release or probation is a separate crime from the underlying offense, and should be treated as such.  *Id.*  It is just and fair that defendant serve time in state prison for this separate crime and additional time for the federal crime charged

---

[3] The Court may have recognized this when it departed downward from Walsh's GSR as a career offender.  However, the lenience shown Walsh should not be the touchstone for an appropriate sentence for Centola.

herein.[4]

### D. The Section 3553 Factors Warrant a Longer Sentence

It is the government's position that defendant Joseph Centola is highly likely to recidivate based upon his lifelong criminal habits, his drug abuse, and his lack of educational or institutional resources for integration into the community following incarceration. To some extent, society shares some of the responsibility for the last two, education and post-imprisonment resources, but the PSR outlines that Centola has failed to take advantage of the resources previously made available to him. Therefore, serious doubt remains that Centola can successfully transition to a productive, law-abiding life upon release even if additional resources are provided. At some point, we must recognize that this is an individual who lacks the will to change his life. This is demonstrated in his expression of concern to Probation; Centola did not say he regretted having robbed the bank, threatening the tellers or hurting a police officer during his flight. Instead, he worries about whether his fellow inmates will think he is a "rat" because he talked to the police after his arrest. This is hardly the concern of one poised to turn his life around.

Both specific deterrence and protection of society militate for a sentence at the upper end

---

[4] To the extent that the calculation of Centola's criminal history took into account the fact that he was subject to a separate criminal sentence at the time of his current crime, see PSR ¶ 46, there is some overlap in purpose, arguably, with the state violation of probation punishment. In other words, the Commonwealth of Massachusetts has, in effect, told defendant that committing another crime while on state probation will result, and has resulted, in additional punishment. At the same time, the federal prosecution, at least in the guidelines calculation, is saying that the federal crime will be treated more harshly because defendant did it while on probation or supervised release. In terms of this case, however, the two level adjustment to Centola's criminal history under USSG §4A1.1(d) makes no difference because he is in criminal history category VI either way (13 vs. 15 points).

of the guidelines, if not an upward departure. None of the factors set out in 18 U.S.C. § 3553 favor a lighter sentence.

## CONCLUSION

In light of the foregoing, it is the recommendation of the United States that defendant be sentenced to **87 months** to be run consecutively to his state sentence.

        Respectfully submitted,

        CARMEN M. ORTIZ
        United States Attorney

By:

        */s/ thomas e. kanwit*
        Thomas E. Kanwit
        Assistant U.S. Attorney
        (617) 748-3271

Dated:   June 17, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date

        */s/ thomas e. kanwit*
        Thomas E. Kanwit